IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>vs.<br><br>**WILLIAM J. MILLES, JR., and**<br>**DONALD J. LUTZKO,**<br><br>Defendants, | § § § § § § § § § § § § §   Civil Action No.: 1:19-cv-00714 |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendants William J. Milles, Jr. ("Milles") and Donald J. Lutzko ("Lutzko") (collectively "Defendants"), and alleges as follows:

## I.
## SUMMARY

1. Since at least 2014, Defendants Milles and Lutzko preyed on investors by promising guaranteed and oversized returns on oil and gas investments. During the course of this scheme, Defendants raised at least $3.9 million from at least 70 investors in at least 28 states through false and misleading statements and omissions. Among other things, Defendants promised, orally and in writing, guaranteed returns of 227 to 363 percent over the course of six years. The oil and gas investments were in the form of partnership or membership interests in five entities that each allegedly held working interests and revenue interests in oil and gas projects. Milles and Lutzko controlled those five entities: Cap E Fund I, LLP; Cap E Fund II, LLC; Cap E Fund III, LLC; Cap E Fund IV, LLC; Cap E Fund V, LLC (collectively, the "Cap E

Funds"). None of the Cap E Funds or their respective securities are or were ever registered with the Commission.

2. In the course of the scheme, Milles and Lutzko misrepresented and/or omitted numerous material facts to investors. Most notably, Milles and Lutzko claimed that the Cap E Fund projects included wells with hundreds of thousands of barrels of oil and gas in existing production and reserves. However, Milles and Lutzko knew, or were severely reckless in not knowing, that these assertions were false. In reality, many of the purported wells had a record of zero production, some had been plugged and abandoned, and others had minimal, non-economic output. Worse yet, some of the purported wells did not even exist. Not surprisingly, the Cap E Funds never generated any revenue. Nonetheless, Milles and Lutzko guaranteed investor distributions "regardless of the price of oil" on the false pretense that Lutzko owned other productive wells that could supplement revenue from the Cap E Fund projects. Milles and Lutzko also failed to disclose that several state securities regulatory agencies had previously taken actions against oil-and-gas companies owned and controlled by Milles.

3. To conceal their fraudulent representations, and contrary to specific representations about how investor funds would be used, Milles and Lutzko operated a Ponzi scheme—using investor funds to satisfy the monthly payment guarantees made to some of the investors. And, Defendants misappropriated and misused investor funds in other ways. Of the at least $3.9 million received from investors, Defendants spent $817,000 to make Ponzi payments; roughly $1.2 million to pay undisclosed commissions to contract salesmen; and $1 million for personal expenses, personal cash withdrawals, related-party payments, and to fund their own salaries.

4. In regular communications with investors ("status reports"), Milles and Lutzko misrepresented the Cap E Funds' purported operations, revenue, and financial future. These status reports falsely portrayed that the Cap E Funds were proceeding as promised. After the collapse of the scheme, Defendants told investors that their interests and operations were being moved to a completely fictitious entity—Omega Group I, Inc. ("OGI").

5. By committing the acts alleged in this Complaint, Defendants directly and indirectly engaged in, and unless restrained and enjoined by the Court will continue to engage in, acts, transactions, practices, and courses of business that violate the anti-fraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Defendants also violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)] by offering to sell and/or selling unregistered securities.

6. In the interest of protecting the public from any further fraudulent activity and harm, the Commission brings this action against Defendants seeking: (a) permanent injunctive relief; (b) disgorgement of ill-gotten gains; (c) accrued prejudgment interest on those ill-gotten gains; (d) civil penalties; and (e) all other equitable and ancillary relief to which the Court determines the Commission is entitled.

## II.
## JURISDICTION AND VENUE

7. This case involves the offer and sale of partnership and/or membership interests in the Cap E Funds to investors. These partnership and membership interests are investment contracts, which are securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c]. Thus, the Court has jurisdiction over

this action under Section 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78(aa)].

8. Defendants directly and indirectly made use of the mails or of the means and instrumentalities of interstate commerce in connection with the transactions, act, practices, and courses of business described in this Complaint.

9. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred within the Western District of Texas, Austin Division, including but not limited to Defendants' sales of securities, misrepresentations, acts, practices, transactions, and courses of business.

## III.
## DEFENDANTS

10. Defendant William J. Milles, Jr., age 58, is a natural person residing in Warminster, Pennsylvania.

11. Defendant Donald J. Lutzko, age 75, is a natural person residing in Toronto, Ontario, Canada.

## IV.
## RELATED ENTITIES

12. Capital Energy Group, LLC ("Capital Energy") is a Delaware limited liability company formed in 2012 with its principal place of business in Austin, Texas. Capital Energy served as the managing general partner or managing member for the Cap E Funds. Capital Energy's only members were Milles and Lutzko.

13. Cap E Fund I, LLP ("Cap E Fund I") is a Delaware limited liability partnership formed in 2013 with its principal place of business in Austin, Texas. Neither Cap E Fund I nor its securities are or were ever registered with the Commission.

14. Cap E Fund II, LLC ("Cap E Fund II") is a Delaware limited liability company formed in 2014 with its principal place of business in Austin, Texas. Neither Cap E Fund II nor its securities are or were ever registered with the Commission.

15. Cap E Fund III, LLC ("Cap E Fund III") is a Delaware limited liability company formed in 2014 with its principal place of business in Austin, Texas. Neither Cap E Fund III nor its securities are or were ever registered with the Commission.

16. Cap E Fund IV, LLC ("Cap E Fund IV") is a Delaware limited liability company formed in 2014 with its principal place of business in Austin, Texas. Neither Cap E Fund IV nor its securities are or were ever registered with the Commission.

17. Cap E Fund V, LLC ("Cap E Fund V") is a Delaware limited liability company formed in 2016 with its principal place of business in Austin, Texas. Neither Cap E Fund V nor its securities are or were ever registered with the Commission.

## V.
## FACTS

### A. CAPITAL ENERGY'S OPERATIONS

18. From at least July 2014 through at least July 2016, Milles and Lutzko raised at least $3.9 million from approximately 70 investors in 28 states by offering and selling interests in the five Cap E Funds, which would purportedly rework oil and gas wells in Texas and Oklahoma (the "Capital Energy Offerings"). Defendants lured these investors with oral and written promises of guaranteed returns of 227 to 363 percent over the course of six years. Then Defendants concealed their fraud by sending investors false status reports and making Ponzi payments.

19. Milles and Lutzko created and controlled Capital Energy, serving as the only managing members of Capital Energy and, respectively, as CEO and President of Capital

Energy. As CEO, Milles was primarily responsible for general operations. He managed the purported operators and geologists, and oversaw the purported drilling activities. As President, Lutzko was primarily responsible for sales and marketing efforts, including raising investor funds and managing and directing the salesmen. While Milles was the only signatory on all bank accounts, Lutzko knew of, approved, and sometimes directed the use of investor funds.

20. By virtue of their control of Capital Energy, Milles and Lutzko controlled the Cap E Funds. Capital Energy served as the managing general partner[1] for the Cap E Funds. Moreover, the Cap E Fund offering documents explicitly provided that "[a]ll decisions of [Capital Energy] will be binding on the Partnership and the Partners."

21. Milles and Lutzko solicited investors through nationwide cold-calling campaigns performed by two contract salesmen. After initial introductions by the contract salesmen, Lutzko pitched investors on the details of the investments and made representations regarding the wells' status and production. Milles also participated in many of these sales pitches. Milles and Lutzko promised investors monthly guaranteed returns of between 227 and 363 percent for a term of six years, depending on the offering.

22. Offering documents sent to investors for each project consisted of a Private Placement Memorandum ("PPM"), an executive summary, and a subscription agreement—all of which were authored and distributed by Milles and Lutzko. Milles and Lutzko recycled offering documents for each new project, swapping out the unit price, return estimates, and some information regarding the wells and operations. Each PPM was modeled off the same template

---

[1] The offering documents were not updated for each new offering to reflect the accurate corporate structure. For example, Capital Energy was consistently referred to as the "managing general partner" of the five proposed oil and gas "partnerships" despite the fact that only Cap E Fund I was structured as a partnership; Cap E Funds II-V were limited liability companies.

with only the names of leases or wells changed and slight adjustments made to projected returns on investment.  All of the executive summaries were signed by either Milles or Lutzko.

23.     The offering size for the Capital Energy Offerings ranged from $1.66 million to $2.57 million, and Milles and Lutzko structured each investment opportunity identically: investors purchased a partnership interest or membership interest[2] in a particular Cap E Fund that allegedly held working interests and revenue interests in oil and gas projects.  According to the PPMs, these wells were supposed to be reworked by a third-party operator, who would be managed by Capital Energy.

24.     Many investors had no private investment experience, had no oil-and-gas investment experience, and were not accredited.  Further, Milles and Lutzko took no steps to confirm investors' accreditation status beyond the occasional certification signed by investors, and Lutzko pressured some unaccredited investors to sign false accreditation certifications.  Investors had no role in the management of the operations and were not solicited for their votes or approvals.

B.     **DEFENDANTS ENTICE INVESTORS WITH FRAUDULENT MISREPRESENTATIONS AND OMISSIONS**

25.     The PPM and executive summary sent to investors for each project contained materially false and misleading statements and omissions regarding the historical and projected production data for the proposed well sites as well as baseless guarantees of distribution payments regardless of fluctuations in the price of oil.  These offering materials also failed to disclose material, prior regulatory actions against oil-and-gas entities owned and controlled by Milles.

---

[2] As explained above, only Cap E Fund I was structured as a partnership.  Cap E Funds II-V were LLCs, but neither Milles nor Lutzko changed the offering documents to reflect the accurate corporate structure and sale of a membership interest versus a "partnership interest."

### 1. *False data regarding historical and projected well production.*

26. The Cap E Fund offering documents included false and misleading claims about historical and existing oil production, and outlandish future projections and promised returns. Milles and Lutzko knew, or were severely reckless in not knowing, that the well and production data they provided to investors was false.

27. The executive summary distributed to investors for Cap E Fund I stated that the four wells to be reworked were located on an operator's lease in Frio County, Texas, and that this lease had "produced approximately 250,000 barrels of oil to date" with an "additional projected 400,000+ barrels of reserve." Two of the four purported wells were identified in the executive summary, however according to Texas Railroad Commission records: (a) one well had zero production; (b) the other well does not appear to exist; and (c) the operator selected by Milles and Lutzko only produced 458 barrels of oil in all of Frio County dating back to January 2013. Nevertheless, the executive summary promised a 302-percent return over the course of a six-year period.

28. Cap E Fund II's executive summary claimed that four wells Capital Energy would rework were located in Guadalupe County, Texas and had produced "200,000 barrels of oil to date," with 180,000 barrels of oil in reserve. Based on these figures, the PPM and executive summary promised investors a 363-percent return over the course of a six-year period. According to Texas Railroad Commission records, however, the wells actually produced a cumulative 468 barrels of oil from January to July 2011 with no record of production thereafter.

29. Offering documents for Cap E Fund III provided inconsistent, but nonetheless false data. The PPM stated that existing production for four Texas wells totaled 240,000 barrels. The executive summary, however, stated the wells had produced "200,000 barrels of oil to date." Although the four wells were not identified, four leases were identified as the purported

operation sites. These four leases contained a cumulative 30 wells, and Texas Railroad Commission data contradicted the PPM's production claims. According to data from the Texas Railroad Commission, the wells' actual total production and actual date of last production were as follows:

| Lease | Total Production to Date | Date of Last Production |
| --- | --- | --- |
| Ranft 2767 | 5,955 barrels | November 1995 |
| Ranft 14223 | 12,961 barrels | August 2012 |
| Klein | 2,226 barrels | January 2011 |
| Knodel | 468 barrels | July 2011 |

30. Offering documents for Cap E Fund IV also provided inconsistent—but nonetheless false—data. The executive summary stated four prospect wells in Texas had produced "approximately 200,000 barrels of oil to date," while the PPM stated 240,000 barrels. The purported wells were located on the two Ranft leases listed above. Total production from those 16 wells (two of which were plugged and abandoned) was 18,916 barrels. Nevertheless, the executive summary listed a 227-percent return over a six-year period

31. The Cap E Fund V executive summary stated that Tulsa County, Oklahoma leases underlying the proposed wells had produced "250,000 barrels of oil to date with a projected 200,000 barrels of reserve." It further claimed those leases had gas reserves "in excess of 3.5 to 4 billion cubic feet minimum." Yet, according to the Oklahoma Corporation Commission, all but one of the wells were plugged and abandoned four years prior to the Cap E Fund V offering period. The one remaining well had produced only 20 barrels of oil in January 1982 and its gas production was listed as "TSM", or "too small to measure." The PPM identified an operator of these wells. However, that named operator was not and never had been the operator of record

for the only well that hadn't been plugged and abandoned.  Nevertheless, the PPM and executive summary claimed investors would make a 232-percent return.

### 2. *Guarantees of monthly distributions "regardless of the price of oil"*

32. Defendants made additional misrepresentations to investors in the form of guarantees on investment distributions.  Lutzko verbally guaranteed to at least some of the investors that they would receive monthly payments for six years "regardless of the price of oil."  Lutzko told investors this guarantee was possible because he personally owned many productive oil wells, and he would bring more wells on line if the existing well production was insufficient to cover the monthly guarantee.  This was not true.  On information and belief, Lutzko did not personally own any oil wells, and there is no evidence that Lutzko used revenue from said wells to make payments to the Cap E Funds or their investors.

33. Lutzko and Milles also provided this guarantee in writing to many investors, stating: "[a]ny partners which enter into the offering will be given a full 72 payments to match the ROI (Return on Investment) in the offering.  This is in addition to the interest payments which a partner will receive."

34. The guarantee of 72 monthly payments convinced at least some investors to invest with Capital Energy.  For instance, one Pennsylvania investor—a recently divorced and unemployed mother of three children—said Lutzko guaranteed that she would receive payments of $2,414 per month for 72 months "regardless of the price of oil."  She also received a written guarantee.  She was not an accredited investor and had no previous investment experience.  Because of the guarantee, she invested her entire divorce settlement check (and sole savings) of $95,721.67 in Cap E Fund IV.  She received a total of $12,312 in Ponzi payments in return.

### 3. *Failure to disclose prior regulatory actions*[3]

35. Defendants never disclosed regulatory actions that were taken against previous oil and gas companies that Milles founded and controlled. In November 2011, Milles formed a Texas company, American Energy Oil & Gas Resources, Inc. ("American Energy"), and sought to raise $4.5 million by promising investors a 35-percent return within 12-18 months. In 2011, the Pennsylvania Department of Banking and Securities ("Pennsylvania DBS") issued a cease-and-desist order against American Energy, alleging the company engaged in an improper cold-calling campaign and sold securities to non-accredited and unexperienced investors.

36. In 2012, the Pennsylvania Securities Commission ("PSC") issued a cease-and-desist order against a Texas company that Milles formed, XL Hydrocarbon Assets, LLC ("XL"). The PSC alleged that XL conducted a $3.9 million oil and gas offering, engaged in a cold-calling campaign, and sold securities to non-accredited and inexperienced investors. XL promised investors they would "make money right away," and guaranteed returns of 131 percent.

### C. DEFENDANTS PERPETUATED THE FRAUD THROUGH PONZI PAYMENTS AND FALSE STATUS REPORTS

37. After Milles and Lutzko convinced the investors to entrust them with their money, Milles and Lutzko used the funds contrary to representations in the offering documents, in particular for their own personal gain and to perpetuate the fraud. Milles and Lutzko also lulled

---

[3] In addition, over the course of the Capital Energy fraud, various state regulatory agencies brought cease-and-desist actions against Capital Energy, Milles, and Lutzko. In January 2018, the Ohio Division of Securities issued a cease-and-desist order against Capital Energy, Milles, and Lutzko, finding that they engaged in the fraudulent sale of unregistered securities. In November 2018, the Washington Department of Financial Institutions issued a cease-and-desist order against Capital Energy for the fraudulent sale of unregistered securities. In March 2019, the Illinois Securities Department issued an order prohibiting Capital Energy, Milles, and Lutzko from offering or selling securities in Illinois after finding that they engaged in the fraudulent sale of unregistered securities. In May 2019, the Pennsylvania DBS issued an order barring Capital Energy and Milles from offering or selling securities in Pennsylvania for one year based on similar findings.

investors into a false sense of security by fabricating and disseminating status reports designed to deceive investors into believing that the oil and gas prospects were progressing as promised—which they were not.

### 1. *Ponzi payments and other misuses of investor funds*

38. Milles and Lutzko made numerous materially false and misleading statements regarding the use of investor funds. The PPMs for each of the Capital Energy Offerings included a table that represented how investor funds for that specific offering would be used:

| Overhead Costs | 10% |
| --- | --- |
| Securities, Accounting | 5% |
| Partnership Operational Funds | 85% |
| TOTAL | 100% |

39. Had the oil and gas prospects performed as promised and projected, the revenue generated by the prospects would have funded the investors' guaranteed distributions. But Capital Energy never generated a single dollar of revenue.

40. In reality, Milles and Lutzko disregarded the promises and representations in the offering documents about how investor funds were to be used. First and foremost, because the Cap E projects did not generate revenue, Milles and Lutzko made Ponzi payments funded by the investors' capital contributions. The Ponzi payments totaled $817,000.

41. In addition to making $817,000 in Ponzi payments, Milles and Lutzko misused investor funds to pay over $1 million in undisclosed commissions to contract salesmen. Milles and Lutzko also misappropriated investor funds by withdrawing over $300,000 in cash, and sending approximately $41,000 to Milles' previous company (American Energy) and $83,000 to Lutzko's son. Milles also used more than $50,000 to pay personal expenses, including personal

credit card bills and rent. Milles and Lutzko did not inform investors of these misuses of funds.

42.     Milles and Lutzko paid one of their purported operators and a geologist approximately $705,000. Yet Milles and Lutzko failed to disclose to investors that the operator's principal and his entities had previously been the subject of at least two state regulatory actions involving securities violations. Milles and Lutzko knew, or were severely reckless in not knowing, about the operator's and his entities' prior regulatory actions involving securities violations.

43.     In sum, without the investors' knowledge or consent, Defendants spent investor funds in the Cap E Funds as follows:

| Commissions Paid to Salesmen | 31% | $1.22M |
|---|---|---|
| Salary and Personal Expenses of Milles & Lutzko and Related Party Payments | 25% | $1.00M |
| Ponzi Payments | 21% | $817K |
| Funds to Operators | 18% | $705K |
| General Business Expenses | 5% | $208K |
| TOTAL | 100% | $3.95M |

### 2.     *False status reports conveyed the illusion of operations*

44.     Milles and Lutzko regularly communicated with investors and lied about the Cap E Funds' purported operations, revenues, and financial future. In an August 2015 email, Milles told a Texas investor, "we have completed funding" for Cap E Fund III and are "ramping up production." This was false; Milles continued raising Cap E Fund III funds through February 2016 and production for Cap E Fund III *never* commenced. A subsequent August 2015 letter from Milles and Lutzko to the same investor stated "anticipate production fourth quarter on

track" for Cap E Fund I. There was never any production for Cap E Fund I.

45. In a January 2016 letter that was emailed to all investors—during the pendency of the Cap E Fund IV and V offerings—Milles and Lutzko claimed Capital Energy "made the move to acquire gas wells in Oklahoma (we have almost 50 plus wells between Texas and Okla)." They continued: "we are now paying clients from this revenue, since it's a much higher yield," and that "this is actually improving our business both for the short term and long term." They reiterated: "all production payments are coming from these sources." This was false on all counts. Capital Energy never acquired 50 wells or any gas wells, and investors received only Ponzi payments—no oil and gas production revenue was ever generated or paid to the Cap E Funds or their investors.

46. Beginning in March 2016, many investors stopped receiving monthly "distribution" payments. In a status report to all investors in the Cap E Funds, Milles and Lutzko stated that despite the downturn in the oil market they "anticipate[d] the reserves in [our] leases to be long term and able to satisfy the ROI of all offerings." They stated there would be a "90 day postponement in investor participation payments" so that they could "get more wells in production and on line" and "stabilize overall production." This was materially false and misleading. None of the purported wells for any of the projects had sufficient production to produce the guaranteed returns. The Cap E Funds never received any production revenue. And, on information and belief, no contracts existed to procure additional wells.

47. By September 2016, Milles's and Lutzko's scheme collapsed. All investor funds had been spent, and Milles closed all Cap E Fund bank accounts with zero or negative balances. Throughout 2017, however, Milles continued to assure investors that all Capital Energy funds and operations (neither of which existed) were being moved to a new entity: Omega Group I,

Inc., or "OGI, Inc." This entity is fictitious; it has no corporate registration, no corporate documents, and no bank accounts. Milles even created and distributed false OGI, Inc. stock transfer certificates to some Capital Energy investors.

## VI.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

48. Plaintiff Commission realleges and incorporates by reference paragraphs 1 through 47 of this Complaint as if set forth verbatim.

49. By engaging in the conduct described above, Milles and Lutzko directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, knowingly or severely recklessly:

   a. employed a device, scheme, or artifice to defraud; or

   b. made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

   c. engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon a person.

50. By engaging in the conduct described above, Milles and Lutzko violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### SECOND CLAIM FOR RELIEF
**Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]**

51. Plaintiff Commission realleges and incorporates by reference paragraphs 1

through 47 of this Complaint as if set forth verbatim.

52. By engaging in the conduct above, Milles and Lutzko directly or indirectly, singly or in concert with others, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a. knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; or

    b. knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c. knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

53. By engaging in the conduct described above, Milles and Lutzko violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF
### Violations of Sections 5(a) and (c) of the Securities Act  [15 U.S.C. §§ 77e(a) & (c)]

54. Plaintiff Commission realleges and incorporates by reference paragraphs 1 through 47 of this Complaint as if set forth verbatim.

55. By engaging in the conduct described herein, Milles and Lutzko, directly or indirectly, singly or in concert with others:

    a. made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements,

        or otherwise, securities as to which no registration statement was in effect; and/or

    b. made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements, or otherwise, securities as to which no registration statement had been filed.

56. By engaging in the conduct described above, Milles and Lutzko have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

## VII.
## REQUEST FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

1. Permanently enjoin Milles and Lutzko from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a) and (c) 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

2. Permanently enjoin Milles and Lutzko from directly or indirectly, including, but not limited to, through any entity they own or control, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Milles or Lutzko from purchasing or selling securities for their own personal accounts.

3. Order Milles and Lutzko to disgorge ill-gotten gains and benefits obtained or to which they were not otherwise entitled, as a result of the violations alleged herein, plus prejudgment interest on those amounts.

4.   Order Milles and Lutzko to each pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for their violations of the federal securities laws alleged herein.

5.   Order such other relief as this Court may deem just, proper, and equitable.

Dated: July 17, 2019

Respectfully submitted,

 /s/ Jason P. Reinsch
JASON P. REINSCH
Texas Bar No. 24040120
SARAH S. MALLETT
Texas Bar No. 24078907 *(pro hac pending)*
JAMES E. ETRI
Texas Bar No. 24002061 *(pro hac pending)*
United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
Ph: 817-970-2601
Fax: 917-978-4927
reinschj@sec.gov

ATTORNEYS FOR PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION